CUSHMAN SALES AND SERVICE OF NEBRASKA, INC., A CORPORATION, APPELLANT, V. KEN MUIRHEAD, DOING BUSINESS AS R & R SERVICE, APPELLEE, B-E DISTRIBUTING CO., A CORPORATION, INTERVENER-APPELLEE.

268 N. W. 2d 440

Filed July 26, 1978. No. 41607.

Ross, Schroeder & Fritzler, for appellant.

No appearance for appellee.

Luebs, Tracy, Dowding, Beltzer & Leininger, for intervener-appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

The issue presented in this case is which of two creditors had a superior lien on a house trailer owned by a debtor. The specific questions raised are (1) whether a creditor, in order to perfect his lien on a trailer, must note the lien on the certificate of title issued for the trailer, even though no certificate of title is required by law; and (2) whether a chattel mortgage filed with a county clerk met the formal requisites of a financing statement under section 9-402, U. C. C.

The facts in this case are undisputed. On May 14, 1976, Cushman Sales and Service of Nebraska, Inc. ("Cushman"), plaintiff and appellant herein, obtained a money judgment in the amount of $5,850.54 against Ken Muirhead in the District Court for Dawson County. In September 1976, Cushman executed on the judgment, and the county sheriff seized a 42-foot house trailer owned by Muirhead. Legal notice was given that the trailer would be sold at public sale on October 26, 1976.

On the date of the sale, B-E Distributing Co. ("B-E"), intervener and appellee herein, filed a petition in intervention in the District Court. The basis of B-E's intervention was that in 1975 Muirhead had delivered to it a chattel mortgage on the trailer house as security for a promissory note; that Muirhead had defaulted on the note and refused to pay

the outstanding balance of $3,705.91; and that B-E had filed the chattel mortgage with the clerk of Dawson County on February 10, 1976. B-E prayed for a judgment against Muirhead in the amount of $3,705.91, and further prayed that the proceeds of the sale of the trailer be paid to it to the extent of such a judgment.

Cushman contested B-E's petition in intervention on the grounds that a certificate of title to the trailer had been issued in March 1971, and that the certificate of title carried no notation of the lien claimed by B-E. Cushman alleged that it had "a lien superior to that of the intervenor" by virtue of its judgment and execution thereon.

The trial court, after an evidentiary hearing, entered judgment in the amount of $3,705.91 in favor of B-E against Muirhead. It then concluded that B-E's interest in the proceeds of the sale of the trailer was superior to that of Cushman by virtue of B-E's chattel mortgage, which had been filed prior to the date Cushman obtained its judgment against Muirhead. The District Court concluded that B-E was not required to note its lien on the certificate of title to the trailer in order to perfect its lien because a certificate of title was not required for the trailer in question.

Cushman filed a motion for new trial, alleging that the decision of the trial court was (1) not sustained by sufficient evidence; and (2) contrary to law. This motion was overruled, and Cushman has appealed to this court. On appeal, Cushman contends that the trial court erred in (1) finding that B-E had perfected its security interest without noting its lien on the certificate of title issued for the trailer; and (2) in finding that B-E had perfected its security interest by filing a chattel mortgage with the clerk of Dawson County. The latter assignment of error is based on the contention that B-E failed to comply with section 9-402, U. C. C., in that it failed to file a

financing statement and its chattel mortgage was defective as a financing statement.

In support of its first argument, Cushman relies on section 60-110, R. R. S. 1943, which is a part of the act dealing with titles to motor vehicles. See §§ 60-101 to 60-117, R. R. S. 1943. Section 60-110, R. R. S. 1943 provides that Article 9 of the Uniform Commercial Code shall never be construed to apply to or to permit or require the deposit, filing, or other record whatsoever of a security agreement, mortgage, trust receipt, conditional sales contract, or similar instrument covering a motor vehicle. The section further provides that if a notation of a security interest has been made by the county clerk on the face of a certificate of title, that interest shall be valid as against the creditors of the debtor, whether armed with process or not. Section 60-110, R. R. S. 1943, eliminated the practice of filing and recording chattel mortgages on motor vehicles, and substituted the recording of security interests upon the certificate of title itself. Universal C. I. T. Credit Corp. v. Vogt, 165 Neb. 611, 86 N. W. 2d 771 (1957). The section provides a simple method of securing an interest in a motor vehicle that will adequately protect lienholders, creditors, and purchasers. See, Platte Valley Bank of North Bend v. Kracl, 185 Neb. 168, 174 N. W. 2d 724 (1970); Securities Credit Corp. v. Pindell, 153 Neb. 298, 44 N. W. 2d 501 (1950).

In the present case it is undisputed that B-E's security interest in the trailer was not recorded on the certificate of title that had been issued for the trailer. The question presented is whether the Certificate of Title Act applies in this case.

Section 60-101, R. R. S. 1943 provides: "Wherever the words this act occur in sections 60-102 to 60-117, they shall be construed as referring exclusively to those sections." Section 60-102, R. R. S. 1943, provides: "The provisions of this act shall apply to motor vehicles, commercial trailers, semitrailers

and cabin trailers *required to be registered under the provisions of sections 60-301 to 60-306, \* \* \*."* (Emphasis supplied.) Under section 60-301, R. S. Supp., 1976: "Motor vehicles shall include all vehicles propelled by any power other than muscular power, \* \* \*." That section also provides that: "Cabin trailer shall mean every vehicle without motive power designed for living quarters and for being drawn by a motor vehicle, and not exceeding eight feet in width, or *forty feet in length,* or thirteen and one half feet in height." (Emphasis supplied.) Section 60-302, R. S. Supp., 1976, provides that no motor vehicle, trailer, semitrailer, or cabin trailer, unless otherwise expressly provided, shall be operated on the highways of this state unless such vehicle is registered in accordance with the provisions of the Motor Vehicle Registration Act.

In the present case the trailer is 42 feet in length. It is apparent that under sections 60-301 and 60-302, R. S. Supp., 1976, such a trailer is not required to be registered. Therefore, under section 60-102, R. R. S. 1943, the Certificate of Title Act does not apply to such a trailer, and no certificate of title is required by law.

B-E's contention in this case is simply that since there was no legal requirement that a certificate of title be issued for the trailer, it was not required to note its lien on the certificate of title which was issued. Cushman contends that regardless of whether a certificate of title is required, once one has been issued, section 60-110, R. R. S. 1943, applies and a creditor must note its lien thereon in order to perfect its security interest. The trial court rejected Cushman's argument, stating: "If the law does not provide for a certificate of title, section 60-110 is not applicable just because in the instant case there happened to be such a certificate. Such a ruling would defy common sense, as it would place a burden upon a prospective purchaser to determine

whether or not certificates of title had been issued although not required." We agree, and find there is no legal requirement, statutory or otherwise, that a lien be noted on a certificate of title, which, although issued, was not required to be issued and covers property not subject to the act.

We add that if any change in the law is required to promote certainty in dealing with motor vehicles and the various types of trailers referred to in section 60-102, R. R. S. 1943, that problem should be addressed to the Legislature rather than to this court.

We now consider Cushman's second assignment of error in its brief on appeal to the effect that the trial court erred in finding that B-E had perfected its security interest by filing its chattel mortgage with the clerk of Dawson County. The chattel mortgage in question was dated December 9, 1975, but was not filed of record until February 10, 1976, and was given by Ken Muirhead to B-E Distributing Company "For the purpose of securing payment of Four Thousand Nine Hundred Forty-one dollars and 36 cents." The property purportedly covered by the mortgage is described as "Cabin on Midway Lake-Lot #2 Described as 40 x 20 with patio, completely furnished: * * *." While there may have been some question appearing from the face of the instrument alone as to whether the description of the collateral was sufficient for the purpose of determining the applicability of the Certificate of Title Act, this problem was resolved by a stipulation between the parties to the effect that the cabin referred to in the chattel mortgage was in fact the property involved in this litigation between the parties to this appeal.

We note at the outset that the statutory provisions for recording conditional sales contracts and chattel mortgages on property, in effect in Nebraska prior to the adoption of the Uniform Commercial Code in 1963, which became operative at midnight on Sep-

tember 1, 1965, specifically repealed the existing sections of the statutes in question. See Laws 1963, c. 544, art. 10, s. 10-102, p. 1943. In lieu thereof, the Uniform Commercial Code substituted provisions requiring the filing of a financing statement in order to perfect security interests in chattels, including chattel mortgages, with certain exceptions not applicable in this case. See §§ 9-105, 9-302, 9-401, 9-402, and 9-403, U. C. C. The record in this case does not reveal that Cushman had any actual notice or knowledge of the existence of B-E's chattel mortgage. Subsection (1) (b) of section 9-301, U. C. C., provides that: "(1) except as otherwise provided in subsection (2) an unperfected security interest is subordinate to the rights of * * * (b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected." Cushman became a lien creditor when it obtained judgment against Ken Muirhead, and later executed on the trailer. There is no evidence that Cushman had knowledge of B-E's claimed security interest prior to that time. Therefore, if B-E's security interest were unperfected as of that time, Cushman is entitled to priority as to the proceeds of the sale of the collateral. We agree with Cushman's contention that B-E's security interest was unperfected as of that time. A perusal of the chattel mortgage in question clearly indicates that it does not contain an address of the secured party, nor provide a mailing address for the debtor. This court has stated that the "formal requisites of a financing statement are two: (1) The signatures and addresses of both parties; and (2) a description of the collateral by type or item." Mid-America Dairymen, Inc. v. Newman Grove Coop. Creamery Co., Inc., 191 Neb. 74, 214 N. W. 2d 18 (1974).

We conclude, therefore, that since the chattel mortgage in question was defective as a financing statement, B-E's security interest was unperfected under section 9-302, U. C. C.; and therefore Cushman

is entitled to priority as to the proceeds of the sale of the trailer by virtue of section 9-301 (1) (b), U. C. C. It appears that the trial court erred in holding that B-E Distributing Co. had priority as to the proceeds of the sale of the trailer, and therefore the judgment of the District Court must be reversed.

REVERSED.