**In re L & K TRANSPORTATION CO., INC., Debtor.**

**Bankruptcy No. 80–01768–HL.**

United States Bankruptcy Court,
D. Massachusetts.

Feb. 9, 1981.

MEMORANDUM ON CLAIMED SECURITY INTEREST IN IRREGULAR ROUTE COMMON CARRIER CERTIFICATE

HAROLD LAVIEN, Bankruptcy Judge.

Plaintiff in this action has objected to the intended sale by the Trustee of the debtor's Irregular Route Common Carrier Certificate free and clear of all encumbrances. Plaintiff claims that he has a security interest in said Certificate and that such security interest must attach to the proceeds of the sale. The Trustee claims that plaintiff's security interest has not been properly perfected, that therefore, it is not valid as against the Trustee under 11 U.S.C. sections 541 and 544 and M.G.L. ch. 106 section 9–301(3), and that therefore the plaintiff has no rights to the proceeds from the sale.

The facts are as follows: On August 12, 1976, the plaintiff, George Larks, entered into a Purchase and Sale Agreement with one Benjamin Goldfarb for the purchase of a trucking business then known as George Larks, d/b/a L & K Transportation Co. Subsequent to the sale, and pursuant to the agreement between the parties, the assets of L & K Transportation Co. were transferred to Goldfarb's nominee, L & K Transportation Co., Inc., the debtor in this case. This transfer included a Commonwealth of Massachusetts Department of Public Utilities Irregular Route Common Carrier Certificate No. 3304. Although the transfer was effected on the books and records of the D.P.U. with the address of the debtor listed as 235 Upland Road, Newtonville, Massachusetts, the debtor moved into the office previously used by Larks at 90 New-

market Square, Boston, and he arranged to use the same telephone number and Boston address used by Larks.

In conjunction with the purchase and sale agreement, in February, 1977, the parties entered into a security agreement which was itself filed as a financing statement in the offices of both the Clerk of the City of Boston and the Secretary of State of the Commonwealth. The financing statement does not include the address of the debtor.* Each statement describes specific vehicles in which the plaintiff has a security interest and a general description of "all other vehicles, equipment, furniture, fixtures and other operating assets of the Debtor."

On October 10, 1980, the debtor filed for relief under Chapter 7 of Title 11 of the United States Code. A trustee was appointed on October 14, 1980. On December 3, 1980, the Trustee gave notice of an intended sale of the D.P.U. Certificate, such sale to be free and clear of all mortgages, encumbrances, liens, attachments and restraining orders of record. On December 12, 1980, Larks filed an objection to the intended sale on the grounds that as a secured creditor pursuant to the security agreement, he had a security interest in the Certificate and was therefore entitled to the proceeds of the sale. On December 23, 1980, Larks and the Trustee stipulated that the sale of the D.P.U. Certificate would take place and that the alleged security interest of Larks would, if established, attach to the proceeds of the sale. The issue of Larks' security interest is presently before the Court.

Four issues are presented for the Court's determination: 1) whether Larks, in failing to file in the City of Newton, has satisfied the filing requirements of M.G.L. ch. 106 section 9–401 by filing a copy of the security agreement with the Clerk of the City of Boston and with the Secretary of State of the Commonwealth; 2) whether the description of the collateral contained in the security agreement was broad enough to include the D.P.U. Certificate; 3) whether the financing statements as filed by Larks comply with the requirements of M.G.L. ch. 106 section 9–402 in spite of the omission of the debtor's mailing address; and 4) whether a D.P.U. Certificate can be pledged as collateral. In order for the Court to find that the plaintiff does have a valid security interest, it must find favorably for plaintiff on all four issues. An unfavorable finding on any one issue will require a finding for the trustee.

1. At the hearing on this issue the debtor testified that all of its billing and administration of accounts was handled through the debtor's personal residence on Upland Road in Newtonville. However, the debtor also testified that the operational aspects of the business, i. e. the day to day trucking jobs, were handled at the Newmarket Square location which was the address listed under the debtor's name in the telephone directory. The trucks were registered at the Newton address but garaged at the Boston address.

■ The relevant law, M.G.L. ch. 106 section 9–401(1)(c), provides, *inter alia*,

in all other cases, in the office of the state secretary and in addition, if the debtor has a place of business in only one town of this state, also in the office of the clerk of such town, or, if the debtor has no place of business in this state, but resides in the state, also in the office of the clerk of the town in which he resides.

I find that the debtor had more than one place of business in the Commonwealth and that therefore, his filing in the Secretary of State's office satisfied the requirements of M.G.L. ch. 106 section 9–401(1)(c).

2. M.G.L. ch. 106 section 9–402 states, *inter alia*, that "a financing statement is sufficient if it . . . gives a mailing address of the debtor." Courts have split on the question of whether the lack of the debtor's address render the financing statement ineffectual.[1] While Massachusetts courts

---

* The debtor is listed as "L & K Transportation Co., Inc., a Massachusetts corporation."

1. For those cases holding that the failure to provide the debtor's address renders the secured party's security interest ineffective as ·

have stated that minor errors will not affect the validity of the filing, *Sales Finance Corp. v. McDermott Appliance Corp.*, 340 Mass. 493, 165 N.E.2d 119 (1960); *National Cash Register Co. v. Firestone & Co., Inc.*, 346 Mass. 255, 191 N.E.2d 471 (1963), no Massachusetts court has ruled that the omission of the debtor's address is a minor error. The United States Bankruptcy Court for the District of Maine has recently stated that even a "bare bones" financing statement is properly perfected if it includes, among other things, a mailing address for the debtor. *In Re Triple A Sugar Corp.*, 3 B.R. 240 (Bkrtcy.1980).

█ This Court recognizes and agrees with the legislative injunctions that the Uniform Commercial Code be "liberally construed and applied to promote its underlying purpose and policies" of simplifying and clarifying commercial transactions, M.G.L. c. 106 section 1–102, and that a financing statement is to be upheld "even though it contains minor errors which are not seriously misleading," M.G.L. c. 106 section 9–402(5). The Court is not prepared to hold that the complete absence of the debtor's address on a financing statement is the type of minor error contemplated by section 9–402 unless the debtor was so well known that there could be no question of its identity and address and mail without more would be delivered without undue delay or confusion. This was the case in *In Re Bengston*, 3 UCC Rep. 283 (D.C.Conn.1965) where the court held that a financing statement was sufficient where the debtor was a well known landmark in the community such that mail would be delivered to the debtor with an address that is imprecise at best, and possibly even totally absent. In this case, however, the debtor was clearly not such a well known entity for mail to be delivered to it utilizing its name alone as an address, and as such I find that the absence of the debtor's address on the financing statement precludes the establishment of a valid security interest. *See* cases cited *supra*.

█ 3. The Court reaches no conclusion on the issue of whether a prior hearing and prior approval of the D.P.U. was necessary for there to be a valid security interest created in the Certificate since, at the outset, I rule that as a matter of law in Massachusetts a D.P.U. Certificate is not the type of property that falls within the class of general intangibles under Mass.Gen.Laws c. 106 section 9–106 and therefore, is not the proper subject of a security interest. While in other jurisdictions local laws might be different,[2] in Massachusetts the law is clear on this point. In *A. R. Sandri v. United States*, 266 F.Supp. 139 (D.Mass.1967) citing *Roberto v. Dept. of Public Utilities*, 262 Mass. 583, 160 N.E. 321 (1928), the court held that a D.P.U. Common Carrier Certificate is neither property nor a right to property, but is instead, a privilege. In the *Sandri* case, the court refused to order the D.P.U. to accept an application for the transfer of the D.P.U. Certificate when the proposed transferee had obtained the Certificate at a public auction sale conducted by the I.R.S.

4. The issue of whether the financing statement adequately describes the collateral under M.G.L. c. 106 section 9–402(1) is a close one and, in light of the Court's finding on the other issues presented, is not determinative of the outcome of the case and therefore it need not be decided.[3]

---

against a hypothetical lien creditor, see *In Re Lindley*, 12 UCC Rep. 757 (D.C.Ala.1973); *In Re Smith*, 205 F.Supp. 27 (E.D.Pa.1962); and *Cushman Sales and Service, Inc. v. Muirhead*, 201 Neb. 495, 268 N.W.2d 440 (1978). For cases *contra, see Riley v. Miller*, 549 S.W.2d 314 (Ky.App.1977); *In Re Bankrupt Estate of Smith*, 508 F.2d 1323 (5th Cir., 1975); *In Re Fowler*, 407 F.Supp. 799 (W.D.Okl.1975), and *Rooney v. Mason*, 394 F.2d 25 (10th Cir. 1968).

2. For cases in other jurisdictions holding that a license is "property", and is, therefore, the proper subject of a security interest, *see Gibson v. Alaska Alcoholic Beverage Control Board*, 377 F.Supp. 151 (D.Alaska 1974); *Bogus v. American National Bank of Cheyenne*, 401 F.2d 458 (10th Cir. 1968); *Paramount Finance Company v. United States*, 379 F.2d 543 (6th Cir. 1967).

3. For a liberal interpretation of the description requirement of section 9-110 of the Uniform

The Court having found that the security agreement and financing statement are fatally defective in that they omit a mailing address for this obscure debtor and, were that not so, the security agreement could not in any event include the carrier rights which are not property or rights to property under Massachusetts law subject to a lien, the proceeds of the sale by the Trustee of the carrier rights are not subject to the purported security interest of Lark.

Commercial Code, *see, National Cash Register v. Firestone & Co.*, 346 Mass. 255, 191 N.E.2d 471 (1963), *In Re Amex Protein Development Corp.*, 504 F.2d 1056 (9th Cir. 1974). For cases requiring a specific description of collateral un-

der section 9 -110 *see, In Re Werth*, 443 F.Supp. 738 (10th Cir. 1978), *In Matter of H. L. Bennett Co.*, 3 B.C.D. 1064 (1977), *In Re Fagan*, 26 UCC Rep. 1004 (S.D.N.Y.1978).