GUARDIAN STATE BANK, a Utah banking corporation, Plaintiff and Appellee,

v.

Charles LAMBERT dba LC Investments, Defendant and Appellant.

No. 910438–CA.

Court of Appeals of Utah.

June 30, 1992.

Gerald M. Conder, Salt Lake City, for defendant and appellant.

Stephen B. Mitchell, Salt Lake City, for plaintiff and appellee.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Appellant Charles Lambert dba LC Investments (Lambert) appeals the trial court's entry of summary judgment in favor of appellee Guardian State Bank (Guardian) declaring that Guardian's perfected security interest has priority over Lambert's unperfected security interest in the same collateral. We affirm.

## BACKGROUND

On February 10, 1983, Rocky Mountain State Bank (Rocky Mountain) filed a UCC–1 financing statement with the State of Utah covering "[a]ll inventory & accounts receivable, all machinery & equipment, furniture & fixtures, leasehold improvements now owned or hereafter acquired" by Richard L. Boyer. On November 21, 1983, Rocky Mountain filed another UCC–1 financing statement with the State of Utah covering the same collateral but listing the debtor as The Garlic Press, the registered and assumed name of Boyer. On August 11, 1986, Rocky Mountain made a loan to Boyer dba The Garlic Press secured by the collateral described in the two financing statements.

Rocky Mountain was subsequently closed by federal authorities and taken over by the Federal Deposit Insurance Corporation (FDIC). The FDIC assigned its interest in The Garlic Press note and security agreement to Lambert. The November 21, 1983 financing statement securing the Rocky Mountain loan expired on November 21, 1988 and the FDIC's security interest therein became unperfected.

On February 28, 1989, Lambert filed an assignment of the FDIC's interest in the Rocky Mountain loan and collateral with the Secretary of State. On the same date, Lambert also filed a new UCC–1 financing statement purporting to reinstate the security interest in the collateral. However, neither Lambert nor Boyer signed the new financing statement.

On February 15, 1990, Guardian made a Small Business Administration loan to The Garlic Press, which it secured by the same collateral as that included in the financing statement Lambert filed. Guardian filed its UCC–1 financing statement on February 15, 1990 with the Secretary of State.

Boyer defaulted on the Guardian loan, leaving an unpaid balance due of $64,886.42. Guardian filed an action against Lambert in Third District Court in Salt Lake County, claiming Lambert's financing statement was invalid and that Guardian's security interest therefore, had priority over Lambert's interest in the collateral. Lambert filed a motion for partial summary judgment requesting a declaration that his security interest had priority over Guardian's. The court denied Lambert's motion for partial summary judgment after determining, as a matter of law, that Lambert's financing statement was invalid because it was not signed. The court subsequently granted Guardian's motion for summary judgment, determining that Guardian's perfected security interest had priority over Lambert's unperfected security interest. This appeal followed.

## VALIDITY OF FINANCING STATEMENT

On appeal, Lambert argues that the trial court erred in determining that the financing statement was invalid because it was not signed by either him or Boyer. He claims the failure of either party to sign the financing statement is a minor error, which should not invalidate the financing statement.

When reviewing a grant of summary judgment, appellate courts "liberally construe all evidence and reasonable inferences therefrom in favor of the party opposing the motion" and grant no deference to the trial court's legal conclusions. *Berube v. Fashion Centre Ltd.*, 771 P.2d 1033, 1039 (Utah 1989). Here, the trial court determined the financing statement to be invalid under Utah Code Annotated sections 70A–9–402(1), –402(2)(c), and –402(9) (1990). A trial court's statutory interpretation

presents a question of law on appeal, which we review without particular deference. *Berube,* 771 P.2d at 1038; *Butterfield Lumber, Inc. v. Peterson Mortgage Corp.,* 815 P.2d 1330, 1332 (Utah App.1991). "Unless the language is ambiguous, we construe statutes according to their plain meaning." *Butterfield Lumber, Inc.,* 815 P.2d at 1332 (citing *Berube,* 771 P.2d at 1038).

Except in a few specified circumstances not applicable here, "[a] financing statement must be filed to perfect all security interests." Utah Code Ann. § 70A-9-302(1) (1990). Utah Code Annotated section 70A-9-402(1) requires that a financing statement be signed by the debtor in order to be valid.

> A financing statement is sufficient if it gives the names of the debtor and the secured party, *is signed by the debtor,* gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral....

Utah Code Ann. § 70A-9-402(1) (1990) (emphasis added).[1]

An exception to the requirement that the debtor sign the financing statement is provided in section 70A-9-402(2)(c) which states:

> A financing statement which otherwise complies with Subsection (1) is sufficient when it is signed by the secured party instead of the debtor if it is filed to perfect a security interest in
>
> ....
>
> (c) collateral as to which the filing has lapsed....

Utah Code Ann. § 70A-9-402(2)(c) (1990). In other words, a financing statement which is filed for the purpose of reinstating a lapsed security interest filing, is sufficient with only the secured party's signature. The debtor's signature on the financ-

ing statement in such circumstances is not necessary.

In this case, Lambert filed the financing statement to perfect his security interest in collateral which became unperfected when the financing statement Rocky Mountain filed expired. Therefore, Lambert's signature alone would have been sufficient under section 70A-9-402(2)(c) to make the financing statement valid. The financing statement, however, was not signed by either Lambert or Boyer and therefore clearly does not comply with the plain language of either section 70A-9-402(1) or section 70A-9-402(2)(c). A financing statement which does not comply with the requirements of section 70A-9-402 is invalid and cannot perfect the security interest. *See In re Maple Contractors, Inc.,* 172 N.J.Super. 348, 411 A.2d 1186, 1192 (1979).

Defendant argues, however, that omitting the signature is a minor mistake which, under section 70A-9-402(9), should not invalidate the financing statement. Section 70A-9-402(9) states that "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." Utah Code Ann. § 70A-9-402(9) (1990). This provision is designed to "discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves." U.C.C. § 9-402 cmt. 9 (1972).

However, case law has established that this substantial compliance provision is not all encompassing. It "pertains to minor errors in the contents of the statement and does not relate to one of the formal requisites of a financing statement such as the signatures of the secured parties." *Sommers v. International Business Mach.,* 640 F.2d 686, 692 (5th Cir.1981) (quoting *In re Murray,* 2 U.C.C.Rep.Serv. 667, 670 (D.Or.1964)); *see Southwest Bank v. Mor-*

---

1. Earlier versions of the Uniform Commercial Code required that financing statements be signed by both the debtor and the secured party. Cases cited by Lambert were decided under those versions and held only that financing statements signed by the debtor were valid de-

spite lack of the secured party's signature. *See Strevell–Paterson Fin. Co. v. May,* 77 N.M. 331, 422 P.2d 366, 369 (1967); *Riley v. Miller,* 549 S.W.2d 314, 315 (Ky.App.1977); *Alloway v. Stuart,* 385 S.W.2d 41, 43 (Ky.1964).

*itz*, 203 Neb. 45, 277 N.W.2d 430, 435 (1979) (citing cases finding omission of required signature is not a minor error); *In re Medical Oxygen Serv., Inc.*, 36 B.R. 341 (Ga. 1984) (financing statement lacking requisite signature does not substantially comply with requirements and the lack of signature is not a minor error under section 9–402 of the Uniform Commercial Code). To find that omitting a statutorily required signature on a financing statement is a minor error "would deprive the debtor of the protection which the code was designed to provide and defeat the object of uniformity." *Hobart Corp. v. North Cent. Credit Servs., Inc.*, 29 Wash.App. 302, 628 P.2d 842, 844–45 (1981).

We agree with the vast majority of cases, that the failure to comply with signature requirements is not a minor error and such failure renders the financing statement invalid. *See* U.C.C. § 9–402 n. 16 & n. 28 (1972), 3A U.L.A. 79, 98 (1981 & Supp.1992). We further hold that proper signatures are necessary for both original financing statements filed under section 70A–9–402(1) and reinstatements under section 70A–9–402(2)(c). We conclude that Lambert's financing statement which neither party signed is invalid and therefore did not perfect his security interest in the collateral.[2]

## CONCLUSION

Lambert's security interest was unperfected because it had lapsed before he filed the new UCC–1 financing statement. Utah Code Ann. § 70A–9–403(2) (1990). Because neither Lambert nor Boyer signed the financing statement, the filing was invalid and did not reinstate and perfect Lambert's security interest. Lambert, therefore, had an unperfected security interest in the collateral. Utah Code Ann. § 70A–9–403(2) (1990). Guardian obtained a perfected security interest when it filed its financing statement on February 15, 1990. Guardian's perfected security interest has priority over Lambert's unperfected security interest. Utah Code Ann. § 70A–9–312(5) (1990). We therefore affirm the trial court's grant of summary judgment in favor of Guardian.

BENCH and JACKSON, JJ., concur.

---

2. Lambert also argues on appeal that there are material issues of fact precluding summary judgment. He claims the trial court needs to determine if Guardian had actual notice of Lambert's security interest and what the practices of the Secretary of State's office were with regard to accepting unsigned UCC–1 reinstatements. Those issues were not raised below and therefore cannot be raised for the first time on appeal. *Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1044 (Utah 1983). Moreover, we find them to be without merit.